IRENE C. ALBRIGHT, Respondent, *v.* NEW YORK LIFE INSURANCE COMPANY, Appellant.

Third Department, March 5, 1941.

*Hinman, Howard & Kattell* [*Morris Gitlitz* of counsel], for the appellant.

*Chester B. Smith* [*Charles W. Strong* of counsel], for the respondent.

FOSTER, J.   Defendant appeals from an order granting plaintiff's application for a new trial and setting aside a judgment which dismissed the complaint.   The action is for the reformation of an annuity contract, issued by the defendant on October 29, 1935, to plaintiff's husband, Robert P. Albright.   By its terms the defendant agreed, for the payment of a single premium of $40,000, to pay Mr. Albright during his lifetime an annuity of $2,577.60 in equal monthly installments.   There was no provision for refund in case the annuitant died before the sum total of the monthly payments equaled the amount of the single premium.   Mr. Albright died April 9, 1937, and had received prior to his death seventeen monthly payments under the contract, leaving an excess of the premium paid in an amount of something over $36,000.

Plaintiff alleges that the issuance of this contract was through a mutual mistake on the part of her husband and the defendant, or through a mistake on his part and design on the part of the defendant; and that the contract contemplated and agreed upon was of the cash refund type.   She also alleges that one-half of the single premium paid was her money and that she was a party to the agreement for the annuity.   She seeks to reform the contract so that it shall provide: " The Company further agrees upon receipt of due proof of the death of the annuitant to refund to Irene C. Albright, beneficiary, the excess (if any) of the single premium received by the Company (without interest) over the sum of the annuity payments made."   Under the agreement thus reformed she further seeks to recover the excess premium paid.

The case was tried before the court without a jury at an Equity Term of the Supreme Court.   Plaintiff was permitted to testify as to conversations, preliminary to the issuance of the contract, between herself, her husband and Mr. Quilter, an agent for the defendant.   It should be noted in passing that Quilter died some time before the trial.   The substance of this testimony was that she and her husband were each to contribute one-half of the premium to be paid, and that the agent knew this.   Also that the agent agreed to procure for them a single premium cash refund contract.   The last talk she claims to have had with Quilter was on October 17, 1935.   Several days later her husband signed an application for an annuity contract which called for monthly payments of $2,575.60 a year upon the payment of a single premium of $40,000.   Two of three types of annuity provisions were stricken

out in the application, leaving as his final choice a life annuity to terminate at his death without refund.    Later he signed an amendment to the application which provided for total annual payments of $2,577.60 instead of $2,575.60.    On October twenty-ninth he delivered to the defendant, apparently through the agent Quilter, his personal check for $40,000 and received a contract in accordance with the terms of the application.    Plaintiff testified that she did not see this contract until after her husband's death.

The trial justice stated in his written opinion that he was not convinced of a mutual mistake or of any fraud.    He pointed out that the conversations, between the plaintiff, the annuitant and the agent Quilter, if accepted as true, were merely negotiations for a written contract.    Also, that the last conversation in which plaintiff took part on October 17, 1935, did not constitute a contract.    He further stated that after this conversation her husband signed a formal written application, and it could not be presumed that he signed it under any misapprehension.    He also indicated that he could not find that $20,000 of the $40,000 drawn from decedent's personal account belonged to the plaintiff, and said in connection therewith: " There is no corroboration of plaintiff's bare statement that this is true.    The inference of plaintiff's testimony is that at the time of her conversations with Quilter, $20,000 of her money was in her husband's personal bank account.    The fact is that not only did Robert P. Albright fail to have $40,000, he failed to have $20,000 in his bank account until he sold securities and made deposits on about the 22nd and 23rd of October, 1935."    In conformity with his opinion the trial justice made a decision directing a judgment dismissing the complaint, and in accordance therewith the judgment was entered on the 19th of December, 1939.    Subsequently and on January 15, 1940, an application in behalf of the plaintiff was made at Special Term to vacate the judgment and for a new trial on the grounds that the trial justice committed errors in his findings of fact and conclusions of law, and further erred in refusing to receive certain testimony offered by the plaintiff in rebuttal.    The supporting affidavits were directed to proof of financial arrangements between the plaintiff and her deceased husband, and to the support of her contention that one-half of the premium paid for the contract belonged to her.    She asked that the case be reopened so that she might have the opportunity of presenting such corroborating proof.    There is nothing in the affidavits concerning the failure of the court to receive her testimony offered upon rebuttal.    The court granted her application to vacate the judgment and for a new trial, and stated in its order that it did so in the interests of justice and equity.

The question at issue is whether this order was an abuse of discretion. Undoubtedly, the Supreme Court has inherent power to open its own judgments in the interests of justice where there is sufficient reason to warrant such action. (*Clark* v. *Scovill,* 198 N. Y. 279; *Ladd* v. *Stevenson,* 112 id. 325.) Whether such power shall be exercised is a matter of discretion. (*Vanderbilt* v. *Schreyer,* 81 N. Y. 646.) Judicial discretion, however, is not a matter of unlimited power but must be guided by legal and equitable principles. (*Matter of Bond,* 251 App. Div. 651.) The trial justice was not authorized to vacate the judgment merely because his views had changed. To sustain the order appealed from the record must reveal sufficient grounds for the exercise of discretionary power. In our opinion there are no such grounds in the record before us. The application to vacate the judgment was in reality an application for a new trial for the purpose of producing additional evidence to corroborate testimony of the plaintiff. The notice of motion does not so state but the supporting affidavits so indicate. This additional evidence was not newly discovered, and meets none of the tests usually applied to a motion for a new trial. (*Keister* v. *Rankin,* 34 App. Div. 288; *Grafton* v. *Ball,* 164 id. 70; *Frohlich* v. *Zeltzer,* 185 id. 103.) Moreover, the application fails to touch the vital refusal of the trial court to find that there was evidence of mutual mistake, or of fraud on the part of the defendant.

The order appealed from should be reversed, with costs, and the judgment dismissing the complaint reinstated.

HILL, P. J., BLISS, HEFFERNAN and SCHENCK, JJ., concur.

Order appealed from reversed, with costs and disbursements, and judgment dismissing the complaint reinstated.