### JACOBS v. BEYER.

(Supreme Court, Appellate Division, Second Department.    November 18, 1910.)

1. BROKERS (§ 65*)—EMPLOYMENT BY BOTH PARTIES—EFFECT.

   Where a broker had been employed to effect an exchange of property on terms satisfactory to the owner, and without the owner's knowledge accepted employment from the other party who had agreed to pay him commission for the services rendered to him, the broker's conduct was improper, and precluded a recovery of commissions.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 49; Dec. Dig. §. 65.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BROKERS (§ 65*)—COMMISSIONS—AUTHORITY—"DISCRETION."

The term "discretion," as used in the rule that, where a broker is vested with the least discretion, an employment of the broker by the other side in a similar capacity where his duty and his interests might clash will avoid all his right to compensation, does not mean discretion conferred on a broker to fix the terms of the contract or to accept or reject offers without communicating them to his principal, but means freedom to act according to one's own judgment, unrestrained exercise of choice or will, so that the rule applies where, by reason of such dual relation or employment, the broker's interests may conflict with his duties to his client.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 49; Dec. Dig. § 65.*

For other definitions, see Words and Phrases, vol. 3, pp. 2095–2099.]

3. BROKERS (§ 65*)—COMPLETION OF CONTRACT—EMPLOYMENT BY BOTH PARTIES —RIGHT TO COMMISSION.

Plaintiff, a real estate broker, was employed by defendant to effect an exchange of certain real estate, and, having obtained a prospective purchaser, accepted an employment by him also to effect the exchange. The exchange having been completed, plaintiff sued defendant for commissions, and the broker examined as a witness for plaintiff testified that he knew that the main question with defendant in making the exchange was to pay as little cash as possible, and that it was the witness' duty to get an exchange for defendant with the least cash payment possible, that he was also employed by the other man and knew that he wanted all the cash he could get, and was going to pay the broker to get all the money possible for him. Held, that such evidence indicated a conflict of duty on the broker's part as between the two parties to the exchange which was contrary to public policy, and constituted a complete defense to defendant's liability for commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 49; Dec. Dig. § 65.*]

4. BROKERS (§ 82*)—ACTION FOR COMMISSIONS—DUAL EMPLOYMENT—PLEADING.

In an action for broker's commissions, a dual employment by both parties is an affirmative defense which must be pleaded.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 102; Dec. Dig. § 82.*]

5. APPEAL AND ERROR (§ 889*)—REVIEW—AMENDMENTS DEEMED MADE—CONFORMING PLEADINGS TO PROOFS.

Where, in an action for broker's commissions, evidence of a double employment was received without objection by plaintiff though the defense was not pleaded, and a motion to dismiss was specifically based on the ground that in view of such evidence the agreement to pay was invalid, the answer would be deemed amended to conform to the undisputed evidence, and a judgment for defendant sustained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3621, 3622; Dec. Dig. § 889.*]

Appeal from Trial Term, Kings County.

Action by Matthew Jacobs against Gustave E. Beyer. From a judgment suspending plaintiff's complaint, he appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

Henry S. Mansfield (H. B. Davis, on the brief), for appellant.
Nathaniel Cohen, for respondent.

BURR, J. This action is brought by an assignee to recover broker's commissions. It presents the question whether a broker who has been

employed to effect an exchange of properties on terms satisfactory to the owner thereof may recover commissions for his services where he has, without knowledge of such person, also accepted employment from the other party to the transaction, who has agreed to pay to him commissions for the services rendered to him.

Long ago the rule was formulated that "no man can serve two masters." That rule has become a part of the law of principal and agent, the force of which should not in the slightest degree be impaired. In Duryee v. Lester, 75 N. Y. 442, Judge Andrews, writing for a unanimous court, says:

"It is implied in every contract of agency that the agent shall use his best efforts to promote the interests of his principal, and it is ordinarily inconsistent with the proper discharge by a broker of his duty to one employer that he shall at the same time, and in the same matter be acting for another. The interests of the seller and purchaser of property in the negotiation for its sale are adverse. It is the interest of the seller to get the highest price, and of the purchaser to buy at the lowest. So, when a broker to sell is at the same time the broker to buy, the fact of the double agency, if unknown to the principals, is a breach of his implied contract with each, and operates, or is likely to operate, as a fraud upon both. The law therefore to prevent fraud, and upon the most obvious reasons of justice and policy will not in such a case enforce the contract for compensation, and this, irrespective of the consideration whether the sale made was or was not advantageous to the party from whom the compensation is claimed."

See, also, Murray v. Beard, 102 N. Y. 505, 508, 7 N. E. 553; Empire State Insurance Co. v. American Central Ins. Co., 138 N. Y. 446, 34 N. E. 200; Everhart v. Searle, 71 Pa. 259; Farnsworth v. Hemmer, 1 Allen (Mass.) 494, 79 Am. Dec. 756; Walker v. Osgood, 98 Mass. 348, 93 Am. Dec. 168; Rice v. Wood, 113 Mass. 133, 18 Am. Rep. 459; Raisin v. Clark, 41 M'd. 158, 20 Am. Rep. 66; Bollman v. Loomis, 41 Conn. 581.

It is claimed, however, by the learned counsel for the appellant that this salutary and wholesome rule has been relaxed. Knauss v. Gottfried Krueger Brewing Co., 142 N. Y. 70, 36 N. E. 867. In that case plaintiff was employed by one Bliss to ascertain and report to him persons who would sell their breweries upon terms to be agreed upon between the principals. He was also employed by defendant, which owned a brewery, to introduce its president to any persons wishing to purchase such property. In other words, he was to find out who had breweries for sale and communicate the fact to Bliss, and to find out who wished to buy breweries and communicate the fact to defendant. Beyond that, he had no duty or responsibility. He did not undertake to bring their minds to a meeting, and it does not appear that he was even advised of the terms upon which defendant was willing to sell or Bliss to buy. But in that case the court was careful to say:

"It is undeniable that where the broker or agent is invested with the least discretion, or where the party has the right to rely on the broker for the benefit of his skill or judgment, in any such case an employment of the broker by the other side in a similar capacity, or in one where by possibility his duty and his interest might clash, would avoid all his right to compensation. * * * In regard to the subject of the double employment, if it be of a nature where by possibility the interests of the parties shall be diverse, we agree that it cannot be upheld if concealed from knowledge."

That the discretion referred to was not a discretion conferred upon the broker to fix the terms of the contract or to accept or reject offers without communicating with his principal is apparent. Upon few brokers is such a discretion conferred. Discretion is "freedom to act according to one's own judgment; unrestrained exercise of choice or will." Webster's International Dict., tit. "Discretion." But one is, not free to act in the full discharge of his duty to his employer where his own interest or that of a third person, to whom he is obligated, is in conflict therewith. That he may do it is not impossible, but the law does not permit him to be subjected to temptation. In Everhart v. Searle, supra, the court say:

"The danger of temptation from the facility and advantage for doing wrong which a particular situation affords does, out of the mere necessity, work a disqualification."

We may well adopt as a rule of conduct the words of the Lord Chancellor of England:

"No man can in this court acting as an agent, be allowed to put himself into a position in which his interest and his duty will be in conflict." Parker v. McKenna, 10 L. R., Chancery Appeals, 96, 118.

In Walker v. Osgood, supra, the Supreme Court of Massachusetts say:

"Even if he [the broker] had no authority to bind his principal, and was intrusted with no discretion in fixing the terms of the exchange, and his only service was to bring the parties together, he was bound to perform that service in the interest of the party who employed him. * * * A broker thus employed does not act in good faith if he turn aside all proposals that are not accompanied with an additional retainer or commission. Yet such is the temptation upon him, if he may levy a fee from both parties. When he has secured the retainer of the other party, he is interested, in order to win his double commission, to bring together these two, to the exclusion of all others."

That the word "discretion" was used in this sense by Judge Peckham in Knauss v. Brewing Company, supra, is apparent from the immediately succeeding words, "or when the party has the right to rely on the broker for the benefit of his skill or judgment." The evidence introduced by plaintiff shows clearly the existence of such conflicting interest. The broker was employed by defendant, who owned vacant lots, "to find a deal for him to get him out of the lots which were a great burden to him and get him income property." He submitted to him as such property that belonging to one Kight, consisting of two six-story houses; the said Kight having promised him a commission if he effected the sale or exchange of his property. It appears that defendant was kept in ignorance of such promise. Defendant told the broker in the first instance to submit a proposition to make an exchange of his equity in the lots for the corner house, and "see if he could accomplish that." Immediately the interest of the broker and that of the defendant were in conflict; because, if he could effect an exchange for both houses instead of one, his commission from Kight would be larger. An attempt to negotiate an exchange for one of the houses failed, and then defendant told the broker to see if Kight would consider a deal for both houses. Kight at first demanded a cash bonus of $35,000 for an exchange of his houses, subject to a first mortgage

thereon, for the equity in defendant's lots. Defendant did not wish to advance so much cash and did desire to give mortgages for a part thereof. Various propositions and counterpropositions were carried back and forth by the broker, the principals never coming together, until finally defendant submitted a proposal to pay $22,500 in cash and to give a $7,500 mortgage for a conveyance of the houses in exchange for his interest in the vacant property, and this proposition was accepted.

The broker, when examined as a witness for plaintiff, testified:

"I knew that it was the main question with him (Beyer) as to how little cash he would have to pay. * * * I knew it was my duty to get an exchange for him with the least cash payment possible. * * * I was also employed by the other man. I knew he wanted all the cash he could get. * * * He was going to pay me to get all the money I could get for him."

More conclusive evidence of a conflict between the duty which the broker owed the defendant and his own interest or the interest which he owed to his other employer could hardly be found. The learned trial court was clearly right in holding that the agreement to pay on the part of the defendant could not be enforced under the circumstances, because such agreement was contrary to public policy and good morals. Counsel for the appellant contends, however, that the agreement to pay double commissions was in the nature of an affirmative defense which was not pleaded. We think that the defense was of that character. All that it was necessary for the plaintiff to allege and prove in the first instance was the contract of employment, and that he had procured a person ready, able, and willing to purchase upon terms satisfactory to his employer. The defendant might be unable to deny any of these facts, and yet have a perfect defense to the claim by showing as an additional fact the existence of an agreement to pay double commissions. In Duryee v. Lester, supra, the court, speaking of double agency, said:

"The matter properly we think should have been pleaded (1 Chitty, Pl. 501; Potts v. Sparrow, 6 Car. & P. 671; McKyring v. Bull, 16 N. Y. 297, 69 Am. Dec. 696), but at all events the question should have been raised in some form on the trial, and it is too late to raise it for the first time on appeal."

But, although the defense was not pleaded, the evidence with regard to such double employment was received without objection on the part of plaintiff, and the motion to dismiss was specifically put upon the ground that, in view of such evidence, the agreement to pay was invalid.

We think, therefore, that as plaintiff had the opportunity to offer additional evidence on the subject of the invalidity of the contract and failed to offer such—as, indeed, he could not, since the testimony respecting the same came from the lips of his own witness—the answer may be deemed amended to conform to the undisputed evidence in the case, and the judgment appealed from be affirmed, with costs. All concur.