In the Matter of the Application of DORIS BOND SALVEN for Ancillary Letters of Guardianship of the Property of PRISCILLA BOND, an Infant, and for an Order Directing the MOHAWK NATIONAL BANK to Turn Over Certain Property Belonging to Said Infant. DORIS BOND SALVEN, Petitioner, Appellant; MOHAWK NATIONAL BANK, Respondent.

Third Department, July 2, 1937.

*Mac Neil Mitchell* [*Ormand N. Gale* of counsel], for the appellant.

*Borst & Smith* [*James E. O'Loughlin* of counsel], for the respondent.

HEFFERNAN, J. This is a proceeding instituted under the provisions of subdivision 1 of section 184 of the Surrogate's Court Act for the issuance of ancillary letters of guardianship of property within this State of Priscilla Bond, an infant, to petitioner, her mother; and also for an order requiring respondent to pay to petitioner the funds in its possession belonging to such infant.

From the petition it appears that in October, 1930, petitioner, as the administratrix of the estate of her husband, recovered a judgment in the Supreme Court of Schenectady county against the Schenectady Railway Company because of the negligence of that company in causing her husband's death. The husband left surviving the petitioner, his widow, and two children, Priscilla and Richard Bond, both minors now under the age of fourteen years. The net distributive share of each of the next of kin in the judgment amounted to $6,723.16. At that time the mother and children were temporarily residing in California. Shortly thereafter they became and are now permanent residents of that State. The widow has since remarried. The children have continuously resided with her since their father's death.

Upon the petition of their mother, letters of general guardianship of the estates of the infants were granted to the respondent Mohawk National Bank by the Surrogate's Court of Schenectady county on October 28, 1930, on which date the proceeds of the judgment belonging to the infants were paid to the bank, which has since retained the custody thereof. Subsequently and on September 15, 1931, the infant Priscilla received a legacy from her grandmother amounting to the sum of $100. Thereafter and during the month of October, 1931, petitioner was duly appointed general guardian of the person and property of Priscilla by the Superior Court of the State of California. In connection with her appointment petitioner filed a surety bond in the principal sum of $7,000, which is sufficient to cover the property sought to be obtained in this proceeding.

The petition also shows that the infant has no other property except that already described; that she has been deprived of adequate schooling and lessons in music because of disagreements between her mother and respondent regarding expenses incurred in connection with her education and maintenance; it also appears that on several occasions petitioner has been obliged to employ counsel in order to obtain allowances from respondent for the infant's benefit. Respondent has insisted that petitioner advance moneys necessary for the support and maintenance of the infant and to forward receipted bills to it for such disbursements before obtaining reimbursement.

It is conceded that the petition complied in all respects with section 184 of the Surrogate's Court Act. It is also conceded that there are no debts due or to become due from the infant to any resident in this State and that the security given by the petitioner is sufficient in amount to cover the property sought to be obtained. Upon the filing of the petition the surrogate directed the issuance of a citation to respondent. Although the latter appeared in the proceeding it raised no issue as to the correctness of the allegations of the petition and made no objection to the granting of the relief requested. Notwithstanding the fact that there was no opposition to petitioner's application, the surrogate, for some undisclosed reason, denied the same. From that determination the petitioner has come to this court.

Upon the presentation of a proper petition for ancillary letters to a foreign guardian, section 185 of the Surrogate's Court Act provides, in substance, that if the surrogate is satisfied that it will be for the ward's interest that such letters should be issued to the petitioner, " he may make a decree granting ancillary letters accordingly." It is clear from section 186 of the same act that an application for ancillary letters may be entertained and granted, although there is a resident guardian of property in the jurisdiction where the application is made. (*Matter of Grant*, 141 Misc. 290.) The latter section provides, however, that an ancillary guardian is not authorized to receive from a resident guardian property belonging to a ward " in a case where letters have been issued to a guardian of the infant's property, from a Surrogate's Court of a county within the State, upon an allegation that the infant was a resident of that county, except by the special direction made upon good cause shown, of the Surrogate's Court from which the principal letters were issued. or unless the principal letters have been duly revoked."

In his opinion denying petitioner's application, the learned surrogate remarked: " The question of granting ancillary letters

of guardianship is discretionary with this court and after taking into careful consideration the facts and circumstances of this case it is the opinion of the court that the financial welfare of this child will be conserved best by continuing the guardianship which was granted on the Mother's original petition in this court."

Almost every form of relief has been time out of mind labeled " discretionary." In judicial opinions the word is one of repeated occurrence. The idea which it is designed to express is real, if perhaps vague. Discretion is not the judge's sense of moral right; neither is it his sense of what is just. He is not clothed with a dispensing power or privileged to exercise his individual notions of abstract justice. With him there is no scope for judicial caprice. Principles of law are to be ascertained and followed. Justice is administered in the courts on settled and fixed principles. It does not vary, " like the Chancellor's foot." The rights of litigants do not rest in the discretion or grace of the judge. In all cases that come under his consideration a judge must act with discretion and discrimination and give weight to every circumstance bearing on the question to be adjudicated. He is not at liberty, in determining personal or property rights, to act at his own discretion unrestrained by the legal and equitable rules governing those rights.

Guardianship is a trust of the most sacred character. From the guardian the law exacts absolute fidelity and will be satisfied with nothing less. In the case before us the infant is a citizen and resident of a sister State. Her mother is her natural protector. The mother has been commissioned by the court in the jurisdiction where both are domiciled as the guardian of the person and estate of the daughter. There is eminent propriety in having the personal property of a ward in the same jurisdiction in which such ward has her legal residence. It will, as a general rule, be better cared for and administered at that place. We may confidently assume that the Superior Court of California will jealously guard this infant's estate against unwise or unnecessary dissipation. That court is much more convenient for the administration of the trust. We may also safely assume that the best interests of the child will be subserved by placing the guardianship of her property in the custody of her mother. Surely she will at least be as watchful of her daughter's interests as a banking corporation.

No plausible reason is suggested why the fund should not be transferred. We should not charge ourselves with the administration of the portion of the estate that is here where the proof conclusively shows the regularity of petitioner's appointment by a court of competent jurisdiction in the State where the ward

resides and where the evidence convincingly shows the need of a change. There is not a scintilla of evidence to indicate that the removal of the fund would be inimical to the infant's interests. In fact, we may judicially notice that the estate would suffer financial loss by dual guardianship.

The question of the exercise of the power to remove the personal property of the ward from this State to the State of her residence is addressed to the sound judicial discretion of the court, to be determined upon principles of national comity, equity and justice.

From the proof in this record we are satisfied that petitioner is entitled as a matter of right to ancillary letters of guardianship, and the court below erred in refusing to issue them. Fortified with those letters petitioner will be entitled to the fund in the custody of respondent unless strong and controlling reasons to the contrary are shown to exist.

The decree appealed from should be reversed, with costs, and the matter remitted to the Surrogate's Court to proceed in accordance with this opinion.

HILL, P. J., RHODES, CRAPSER and BLISS, JJ., concur.

Decree reversed on the law and facts, with costs to the appellant, payable out of the fund, and matter remitted to the Surrogate's Court to proceed in accordance with the opinion.