CITY BANK FARMERS TRUST COMPANY (Formerly Known as THE FARMERS' LOAN AND TRUST COMPANY) and Others, as Trustees under Deed of Trust Made by MARY E. CANNON Dated August 5, 1926, and Amendment Thereto, Respondents, *v.* EUGENE T. CANNON and Others, Defendants, and JOHN J. ACKERMAN, as Guardian ad Litem for All Infant Defendants, Appellant.

Second Department, June 29, 1942.

[REDACTED]

*William B. Levet* [*S. James Robbins* with him on the brief], for the appellant.

*C. Alexander Capron* [*Richard J. Turk, Jr.,* with him on the brief], for the respondents.

CLOSE, J.   In this action to settle the accounts of the respondents, as trustees, the adult defendants, who are children and grandchildren of Mary E. Cannon, the settlor of the trust, interposed no objections, while the guardian *ad litem* appointed to represent the infant defendants, who are the grandchildren and great-grandchildren of the settlor, filed a report raising eighteen objections to the settlement of the account as requested by plaintiffs.   The trial court disposed of all but two of the objections on the trial of the action in favor of the accounting trustees; and by its decision and judgment overruled the remaining two objections.   The facts which underlie the litigated objections are as follows:

In August, 1926, Mary E. Cannon entered into a deed of trust with the Farmers' Loan and Trust Company, of New York city, under which she delivered to the latter, as trustee, certain securities, including 300 shares of the capital stock of the National City Bank of New York, of the par value of $100 per share.   The trust agreement authorized the trustee " to retain, so long as it may seem proper, any securities at any time in its hands " and directed that the entire net income of the trust fund be paid Mary E. Cannon during her life.   There was also reserved to the settlor and life beneficiary the right to amend or revoke the trust in whole or in part at any time during her life.   On three occasions between December, 1926, and November, 1928, the trustee, at the request of the settlor, exercised rights to subscribe to additional shares of the National City Bank stock, thereby increasing the number of National City Bank shares in the trust to 3,000 of $20 par value

stock. On June 29, 1929, the trustee, Farmers' Loan and Trust Company, became affiliated with the National City Bank of New York in the following manner: The capital stock of the National City Bank of New York was increased from $100,000,000 to $110,000,000, and the additional $10,000,000 of stock was given to stockholders of the Farmers' Loan and Trust Company at the rate of five shares of stock of the bank, of the par value of $20 each, in exchange for each share of the trust company, of the par value of $100. The stock of the trust company was placed in trust with certain persons and their successors as trustees for the benefit of the stockholders of the National City Bank. The name of the trust company was changed from the Farmers' Loan and Trust Company to City Bank Farmers Trust Company. The stockholders of the National City Bank turned in their old stock certificates and received in return new stock certificates to which had been added an indorsement to the effect that each stockholder of the bank had a *pro rata* beneficial interest in proportion with all other stockholders of the bank in the stock of the City Bank Farmers Trust Company, which was held by trustees. It is undisputed that upon the affiliation of the two institutions the trustee, Farmers' Loan and Trust Company, retired from the commercial banking field and that branch of its business was taken over by the National City Bank, and that the trustee, under its new name, the City Bank Farmers Trust Company, became the vehicle for handling all the trust business of the National City Bank. It is also undisputed that after the affiliation the trustee and the bank had many common officers and directors, that dividends from the earnings of the trustee had been paid to the stockholders of the bank, and that any gain or loss to the bank was a gain or loss to the owners of the stock of the trustee, and similarly any gain or loss to the trustee was a gain or loss to the stockholders of the bank.

Upon the affiliation the trustee, along with all other stockholders of the National City Bank, exchanged the bank shares contained in the trust for new stock certificates containing the indorsement of a beneficial interest in the stock of the trustee, and so notified the settlor of the trust. On July 1, 1929, immediately after the completion of the affiliation of the trustee with the National City Bank, the quotation for the bank stock averaged $400 per share, indicating the value of the 3,000 shares held in the trust to be $1,200,000. These shares which were retained in the trust, where they remained at the time of the settlor's death in May, 1938, had at that time a market value of $18 per share, or a total market value of $54,000.

The guardian *ad litem* contended at the trial that the trustee should be surcharged for the depreciation in value of the National City Bank stock for two reasons: (1) That after the affiliation of the trustee with the National City Bank, the trustee was in a position of divided loyalty between its interest in the trust and its self-interest in its affiliate, the National City Bank, which constituted a breach of trust as a matter of law, requiring the trustee to sell the bank stock or to resign as trustee; and (2) that in retaining the bank stock in the declining market the trustee was negligent. The trial court found that the trustee was not in a position of divided loyalty amounting to a breach of trust as a matter of law for the reason that the trustee, City Bank Farmers Trust Company, did not have any financial interest in the National City Bank or in the stock of that bank which would be served by withholding or discouraging the sale of the bank stock and that the bank stock was retained by the trustee in good faith and in the exercise of care and prudence in the management of the trust. The guardian *ad litem* does not argue the question of good faith in fact, or the care and prudence exercised by the trustee in retaining the stock on this appeal from the judgment entered herein, but contends solely that the relationship between the trustee and the National City Bank subsequent to the affiliation was such as to place the trustee in a position of divided loyalty as a matter of law. The finding of the trial court that the trustee did not act in bad faith and was neither careless nor imprudent in the management of the trust is adequately supported by the evidence, but a close question is presented, dependent for its answer upon whether or not the affiliation of the trustee with the National City Bank placed the trustee in a position of divided loyalty. If, as a result of the affiliation, the trustee occupied a position of divided loyalty and if such conflict between its fiduciary duties and its self-interest give rise only to a presumption of a breach of trust, then the evidence of the existence of good faith in fact, as found by the trial court on the part of the trustee, would be sufficient to rebut such presumption. However, if the existence of a divided loyalty or conflict of interest in itself constitutes a breach of trust, and if the rule invoked by the guardian *ad litem* be a rule of substantive law and not one of evidence, then no amount of good faith in fact on the part of the trustee could overcome it. Harsh though its consequences may occasionally be, it seems to be well established that the rule is one of substantive law. (*Munson* v. *S., G. & C. R. R. Co.,* 103 N. Y. 58; *Wendt* v. *Fischer,* 243 id. 439; *Meinhard* v. *Salmon,* 249 id. 458.) The inflexibility of the rule is expressed in *Munson* v. *S., G. & C. R. R. Co.* (*supra,* p. 74) as follows: " The law permits

no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case." The reason for the inexorableness of the rule was stated by CARDOZO, J., in *Wendt* v. *Fischer* (*supra*) in these words (p. 444): " Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion."

As stated above, the trial court found that there was no such relationship between the trustee and the National City Bank to warrant the application of the rule of undivided loyalty invoked by the guardian *ad litem*. To use the language of the court in *Meinhard* v. *Salmon* (*supra*, p. 468), the trial court failed to find " any nexus of relation between the business conducted by the manager and the opportunity brought to him as an incident of management." Whether the affiliation was tantamount to a merger of the trustee with the bank, or created a joinder of interests between the two institutions which militated against the performance of the trustee's fiduciary duties need not be determined, for the affiliation resulted in a situation in which the trustee held as part of the trust assets its own corporate stock. The stock of the National City Bank after the affiliation cannot be considered merely as the stock of that bank. Formally it was the stock of the National City Bank; substantially it was the stock not only of the National City Bank but of the trustee itself. The conflict of interest here arose not from the trustee's interest in the National City Bank, but from its interest in itself through the stock of the National City Bank. The interest of the trustee in the bank may be negatived by the manner in which the trustee's stock was held, as may also the interest of the bank in the trustee. It is not necessary to determine the extent of the merger or of the joinder of the interests of the trustee and the bank, nor to inquire whether the interests of the bank were beneficially or adversely affected by anything that affected the interest of the trustee and *vice versa*. The two institutions might have been entirely separate and apart and yet, because of the manner in which the trustee's stock was held and evidenced, the trustee placed itself in a position of divided loyalty by retaining the stock of the National City Bank in the trust. It is no answer to the accusation of divided loyalty on the part of the trustee to say, as the trial court found, that the stock of the trustee was not owned by the bank but by the individuals who were the stock-

holders of the bank. This is not a case where through coincidence the stockholders of the bank happen to purchase the stock of the trustee with their shares in the respective institutions, evidenced by separate stock certificates. Here one could not be a stockholder in the National City Bank without also being a stockholder, although it is true only beneficially, of the trustee. When the trustee, on affiliation with the National City Bank, exchanged the bank stock of the trust for new stock containing a beneficial interest in the stock of the trustee, it was in effect purchasing its own corporate stock so far as it was possible to do so. The exchange of the stock was tantamount to a purchase by the trustee of the primary right of its own stock, the right to share in the profits and loss of itself. The trustee thus occupied a position in which its personal interest might have tempted it to retain the stock in the trust contrary to the best interest of the trust estate and the beneficiaries.

We believe the rule stated in *Matter of Trusteeship of Stone* (138 Ohio St. 293; 34 N. E. [2d] 755), concerning the ownership by a corporate trustee of its own stock, to be applicable here. In that case it was said: " Our studied conclusion, applicable to the instant case, is that a corporate trustee cannot acquire its own shares of stock as an investment, or retain its own shares in a trust, without *express* authorization by the terms of the instrument bringing the trust into existence, or by provisions of law. Without such authorization, there is disregard for the duty of absolute faithfulness to the trust, because of the conflict which may and does on occasion arise between the personal interests of the trustee on the one hand and the interests of the trust and its beneficiaries on the other."

While we hold that the trustee was guilty of a constructive breach of trust because of its position of divided loyalty in respect to its retention of the National City Bank stock containing a beneficial interest in the stock of the trustee itself, it must also be held on the proof presented that the settlor and life beneficiary of the trust acquiesced in and consented to the trustee's occupation of such position. In *Smith* v. *Howlett* (29 App. Div. 182) it was said: " Ratification can only occur where the party claimed to have ratified had full knowledge of the facts and of his legal rights, in case it is sought to apply the doctrine as between trustees and a *cestui que trust*." There can be no question but that Mary E. Cannon, the settlor and life beneficiary of the trust, had full knowledge of the facts which constituted a breach of trust on the part of the trustee. The divided loyalty here arose, as above noted, from the one fact that in retaining the National City Bank stock the trustee was also retaining a beneficial interest in its own stock.

She was informed of the nature of the change in the National City Bank stock upon its affiliation with the trustee, when new stock certificates were issued bearing the indorsement of the stockholder's *pro rata* beneficial interest in the stock of the trustee. In the communications between the trustee and Mary E. Cannon, constant reference was made to this fact. In an annual statement of securities held in the trust at the end of the year 1929 forwarded to her, immediately succeeding the listing of the National City Bank stock, appeared the following notation in red ink: "with beneficial interest in the National City Company and City Bank Farmers Trust Company." Since she had knowledge of the fact which created the divided loyalty on the part of the trustee, the question remains whether she had knowledge of her legal rights in respect to the trustee's position of divided loyalty. " The *cestui que trust* must therefore not only have been acquainted with the facts, but apprised of the law, how these facts would be dealt with by a court of equity." (*Adair* v. *Brimmer*, 74 N. Y. 539, 554.) This is not a case where the *cestui que trust* would have had to have recourse to a court of equity in order to remedy the defect in the trustee's position. In such case it would have been incumbent upon the trustee to advise the *cestui que trust* how a court of equity would act in the premises. Here the *cestui que trust* was also the settlor, with a reserved power to amend or revoke the trust. Had she so desired she could have destroyed the divided loyalty by removing the trustee or by directing the trustee to liquidate the National City Bank stock. She was well acquainted with her rights and powers under the trust instrument, as is indicated by the fact that on occasion she added to the principal of the trust and also withdrew part of the principal from the trust. However, not only does the correspondence between her and the trustee evidence her desire that the National City Bank stock be retained in the trust, but in May, 1937, with full knowledge of the retention of that stock and of her power to remove the trustee, she, in effect, reconstituted the trust by a new agreement in which she appointed her son and son-in-law as cotrustees with the City Bank Farmers Trust Company. The record discloses that she exercised a certain measure of control over the trust and that the trustee acceded to her wishes in retaining the bank stock. There was here such acquiescence and consent on the part of the settlor of the trust, with knowledge of the fact which gave rise to the trustee's position of divided loyalty and of her right to remedy the situation thus created, as to constitute a waiver of the breach of trust which the law would construe from the trustee's duality of interests.

The other objections raised by the guardian *ad litem* were correctly disposed of by the trial court as was also the denial of the guardian *ad litem's* motion for a new trial on the ground of newly-discovered evidence and of the motions made in aid thereof. The guardian *ad litem* had the opportunity on the trial of ascertaining the terms of the affiliation agreement dated June 29, 1929, and of cross-examining the officers of the trustee concerning the relationship between the trustee and the National City Bank. In any event, the matters alleged as the basis for the new trial could have been discovered before trial in the exercise of reasonable diligence by the guardian *ad litem*.

Finding of fact No. 37 and conclusion of law No. VIII, in regard to the trustee, City Bank Farmers Trust Company's interest in the stock of the National City Bank which would be served by withholding or discouraging the sale of the bank stock, and finding of fact No. 39 and conclusion of law No. X, in regard to the divided loyalty or conflict of interest on the part of the trustee, should be reversed and new findings made to the effect that the interest of the trustee in its own stock, evidenced by the stock certificate of the National City Bank, was such as to place the trustee in a position of divided loyalty constituting a breach of trust as a matter of law; that there was no divided loyalty in fact; and that the settlor and life beneficiary had knowledge of the facts which created the breach of trust and of her right to remedy the same and that she consented to the trustee occupying a position of divided loyalty.

The judgment, in so far as appealed from, and the order should be affirmed, with costs to all parties filing briefs, payable out of the estate.

LAZANSKY, P. J., JOHNSTON and TAYLOR, JJ., concur; CARSWELL, J., concurs in the result on the findings made and the grounds stated by the trial court.

Judgment, in so far as appealed from, and order unanimously affirmed, with costs to all parties filing briefs, payable out of the estate.

Findings of fact 37 and 39, and conclusions of law VIII and X are reversed and new findings will be made, as set forth in opinion herein by CLOSE, J.

Settle order on notice. (See 265 App. Div. 863, amdg. decision.)