Edward M. Horey, S.
Petitioner seeks a final judicial settlement of its accounts as executor under the last will and testament of Arthur L. Runals, deceased. As a part of the judicial settlement, petitioner requests this Surrogate’s Court to direct by appropriate order that future payments of support to decedent’s surviving first wife be made an obligation of the trustee of decedent’s residuary estate and payable from the income and, if necessary, the principal of that residuary trust.
It appears without dispute that by an agreement dated October 10, 1952, decedent assumed an obligation to pay the sum of $300 a month to his first wife, Florence Runals, for her support. It was provided that such monthly payments were to continue for the lifetime of the first wife. The executor properly concluded that the obligation for payment survived the decedent and was binding upon the estate. The agreement is valid and enforceable. (Matter of Grimley, 200 Misc. 901; Murray v. Murray, 278 App. Div. 183; Barnes v. Klug, 129 App. Div. 192; Matter of Herb, 163 Misc. 441.) The accounts of the executor disclose that the required payments have been considered as periodically accruing debts and have been paid monthly by the executor throughout the administration of the estate.
In this accounting proceeding, provisions for future payments of support to decedent’s first wife are required. It is axiomatic that these provisions must comply with the applicable statutes and fairly resolve the equities of all parties concerned. Proceed *969 ing within this general framework, an examination of relevant statutory provisions is first in order.
SOPA 1804 sets forth the statutory requirements for payment of contingent or unliquidated claims. SOPA 1804 (subd. 1) provides in part:1 ‘ and there shall be no distribution without reservation of such estate assets as the court shall determine to be adequate to pay the contingent or unliquidated claim when the amount thereof shall become due and payable ”.
SOPA 1804 (subd. 2) contains an additional relevant statutory provision: “ if the contingent or unliquidated claim has not become so fixed or liquidated the decree on a final accounting shall direct that the assets found sufficient to satisfy the claim or the proportion to which it is entitled be retained in the hands of the accounting party for such period or periods as the court may deem proper for the purpose of being applied to the payment of the claim when fixed and liquidated and so much of the assets as are not needed for that purpose be afterwards distributed according to law ”. (Italics added.)
The acknowledged claim of decedent’s first wife is based upon a written contract providing for monthly payments of $300 until her death. Her claim is not dependent upon the happening of a future event. The right to payment exists presently. Only the amount of required future payments is uncertain. The claim here is unliquidated, not contingent. (Matter of Baldwin, 157 Misc. 538.)
Petitioner urges that payment of the unliquidated claim of decedent’s first wife would be best provided for by immediate discharge of the executor and the final settlement of its accounts through an order directing that future payments on such claim be made from the trust of decedent’s residuary estate and by the trustee of that trust.
The basis of petitioner’s argument appears to be paragraph first of decedent’s will. It provided as follows: “ In the event that my former wife, Florence Runals, shall survive me, I authorize and empower my executor to purchase an annuity in favor of the former, in an amount sufficient to cover the obligation that I have undertaken for her support by stipulation and agreement dated October 10,1952, but this authorization shall not preclude my executor in its absolute discretion from making any different settlement or adjustment of said obligation”.
In support of its request petitioner advances several arguments. It first argues against the purchase of an annuity for decedent’s former wife. An affidavit of petitioner’s trust officer cites that she is 82 years of age and in an impaired condition *970 of health; that the cost of an annuity, without refund, upon her death is $21,427.10 and the cost of an annuity, with a guaranteed return of basic purchase price is $26,609.90. Petitioner notes that an early death of the former wife would result in a nonrecoverable loss of a substantial portion of the cost of any nonrefund type of annuity. It notes that in the instance of a purchase of a guaranteed return type annuity, that while the purchase price is fully recoverable, a portion of the recovery stems from income earned on the balance of the fund and over the full term of the annuity. The result, it contends, would be that recovery would be protracted over a period of years.
For the reasons stated petitioner contends that its voluntary purchase of either type of annuity would be an abuse of discretion. It further contends and upon the same reasons, that this court should not require such purchase. The court accepts the first contention. There is no nice precise litmus paper test for the exercise of discretion. It is not the province of this court to substitute its judgment for that of the executor, providing always that in the exercise of its discretion the executor has not acted arbitrarily, or contrary to established principles of law. This court cannot say that the risk of loss in the one instance and that of delay in the other are insufficient, or improper to support petitioner’s decision not to purchase an annuity. The court agrees with the second contention of petitioner, but for a different and more compelling reason, viz: the absence in this State of any authority, either by statute or judicial precedent that would authorize this or any Surrogate’s Court to order a lump sum purchase of an annuity in payment of the unliquidated claim currently due. In Matter of Burridge (146 Misc. 527, 528-529) Surrogate Foley noted this void in the probate law of New York. He stated: ‘‘ Examination of the law of this State fails to disclose any case in which the courts have held that the Surrogate has power to direct the representative of the estate to presently pay in a lump sum the present value of a continuing contractual obligation, as requested by her here. The authority of the court to grant relief here must be found in the Surrogate’s Court Act. In certain other States the probate courts are given by statute the power to set aside a fund sufficient to pay the periodic payments due under the contract, or to pay presently a lump sum which, in this case, would be measured by the present life expectancy of the promisee. There is no statutory authority to pay the lump sum in New York. Section 212 of the Surrogate’s Court Act, in my opinion, applies only to the present payment of liquidated claims *971 not yet due, 1 after deducting a rebate of legal interest It does not contemplate or authorize the commutation of future periodic payments or the payment over of the present value based on the life expectancy of the promisee.” It does not appear that the Surrogate’s Court Procedure Act has changed the status of the law.
Because petitioner is correct in what it has not done, it does not follow that it is correct in what it proposes to do. This court can find neither authority nor reason to support the executor’s alternate proposal to fund payment of the unliquidated claim by recourse to a residuary trust.
The applicable statute, SCPA 1804, does not authorize such procedure. It provides that provision for payment will be done by the “ reservation of such estate assets as the court shall determine to be adequate to pay the * * * unliquidated claim when the amount thereof shall become due and payable”. (SCPA 1804, subd. 1.) It directs that “ assets found sufficient to satisfy the claim or the proportion to which it is entitled shall be retained in the hands of the accounting party ” (SCPA 1804, subd. 2). It commands that the decree on nnal accounting 11 shall direct ” the retention of required assets by the “ accounting party (SCPA 1804, subd. 2.)
An extended review of relevant judicial determinations has disclosed no decided precedent that supports the petitioner’s proposal. In Matter of Burrows (283 N. Y. 540, 545) the Court of Appeals reviewed section 207 of the Surrogate’s Court Act, one of the predecessors to section 1804 SCPA, and stated: ‘£ there is the clear command of the statute that £ * * * there shall be no distribution of the assets of said estate without the reservation of sufficient moneys to pay such contingent or unliquidated claims when the amount is finally determined ’ * ,;i * such reservation of moneys must be made by the executrix ”. Surrogate Foley reviewed the various statutory provisions for payment of unliquidated and contingent claims over a period of 13 years. (See Matter of Van Zandt, 142 Misc. 663 [1931]; Matter of Burridge, 146 Misc. 527 [1933] ; Matter of Sielcken, 176 Misc. 784 [1941]; Matter of Black, 178 Misc. 72 [1942]; Matter of Embiricos, 184 Misc. 453: [1944].) In each instance, he held it to be an obligation of the executor or administrator to reserve assets for the payment of unliquidated or contingent claims. Identical decision was made by Surrogate Delehanty in Surrogate’s Court, New York County, in Matter of Reid (165 Misc. 207, affd. 254 App. Div. 850). In the extremely analogous case of Matter of Grimley (200 Misc. 901 [Surr. Ct., New York *972 County (1951) Frankenthaler, S.]) the court required reservation of funds to provide for a wife’s support and stated (p. 903): “ the reserve fund will be administered by the executors
A review of the history of the present requirements of SCPA 1804 evidences the clear legislative intent that payment of unliquidated claims be provided for through reservation of assets and by the executor or administrator of the decedent. It appears that the earliest statutory provision providing for proof and payment of contingent or unliquidated claims was made in 1921 through amendment to section 207 of the Surrogate’s Court Act. (See L. 1921, ch. 629.) In 1941 the Court of Appeals in Matter of Burrows (283 N. Y. 540) construed the provisions of that section to require the reservation of the full amount of a contingent claim in the instance where a bond secured by a mortgage had been given by the decedent. The decision for reservation of the full amount of the claim was made in the face of a finding that the value of the mortgaged property exceeded the debt due. It has been said that: 1 ‘ The decision in Matter of Burrows aroused consternation in the minds of the Bench and Bar alike ” (Butler, N. Y. Surrogate Law and Practice 1941-1950 Supplement, vol. 2, p. 391). “ To obviate the hardship of the Burrows case * * * the legislature of
1941 amended Section 207 on recommendation of the Executive Committee of the Surrogate’s Association ”. (Coleman, 27 Cornell L. Q. 115 [1941].) Under the amendment the Surrogate for the first time was authorized ‘ ‘ to determine judicially whether any reserve of estate assets is required to pay the contingent or unliquidated claim when due. In making such determination the Surrogate is authorized to place a value upon any collateral to which the creditor may resort for the payment of the contingent or unliquidated debt”. (See legislative review by Surrogate Foley in Matter of Black, 178 Misc. 71, 74-75.)
In 1963, upon the recommendation of the Temporary Commission on the Law of Estates, section 207 of the Surrogate’s Court Act was amended and all provisions for payment of unliquidated and contingent claims were contained in a newly added section 208-b of the Surrogate’s Court Act. No change was made in the provisions for the reservation of assets for contingent or unliquidated claims nor in the requirements for the retention of such assets by the accounting party. Most recently, in 1964, these same requirements were recommended for continuance by the Commission on the Law of Estates. (See Practice Commentary by Paul J. Powers, McKinney’s Cons. Laws of N. Y., Book 58A, pp. 94-95.) The Legislature, following the recommenda *973 tion of the commission, included them in SOPA 1804 upon its enactment in 1966. They continue extant today.
Logic and reason supports the statutory scheme of providing for payment of unliquidated claims through the reservation of assets by the accounting party. While it is true, as the petitioner urges, that the law favors the early conclusion of estate proceedings, it is equally true that it first requires payment of decedent’s debts. Witness the required statutory period for the ascertainment of creditors and the payment of their claims. (SOPA 2208.) The order of performance of an executor’s duties was detailed in Matter of Kohler (231 N. Y. 353, 365). They were in order: to collect the securities, to sell the property and convert the assets of the estate into cash, to pay therefrom the debts and funeral and testamentary expenses and then distribute the net residue in accordance with the will. The same pattern prevails in the instance of contingent and unliquidated claims. Full payment of these claims presently being impossible because unascertainable, the law merely provides for a waiting period to abide a determination of the amount of the debt. In the interim, the law logically provides for the retention of assets by the personal representative of the decedent. It is the executor or administrator and not the trustee that is charged with the obligation of paying the decedent’s debts. There is a marked difference between the fiduciary relationship of an executor or administrator and a trustee. The former manages all assets of the decedent and stands in a fiduciary relation to all parties interested in the estate, specifically including creditors. The latter manages only the specific trust fund conveyed to him and is answerable only to the life beneficiary and the remaindermen of the particular trust. It is a mere happenstance that in the instant case the same bank was appointed as both executor and trustee of the residuary trust. This in no way alters the difference of fiduciary relationship between the positions. (Drake v. Price, 5 N. Y. 430; Matter of Union Trust Co. [Lawrence], 70 App. Div. 5; Brundige v. Bradley, 51 N. Y. S. 2d 830, 838, affd. 268 App. Div. 952, revd. on other grounds 294 N. Y. 345; O’Connor v. Chiascione, 130 Conn. 304; 2B Warren’s Heaton, Surrogate’s Courts [6th ed.], § 201, subd. 1 [c].)
The express command of the statute, the authoritative judicial precedent, the legislative history reflecting the continuance of current requirements through 50 years of review by Legislature, judiciary, special commissions, law reviews and the Bar generally, together with the accepted practice that a decedent’s debt be *974 paid before distribution, all lead this court to the conclusion that there is an established public policy in this State that contingent and unliquidated debts of a decedent are to be provided for; that provision for such payment is by reservation of assets; that the amount of assets to be reserved shall be determined by a Surrogate’s Court; that the person charged with the responsibility of providing for payment by reservation of assets is the executor or administrator of decedent’s estate; that the final distribution of assets, settlement of the accounts and discharge of the administrator or executor must be delayed until such claims have been paid, or discharged, or the assets reserved exhausted.
The discretionary power given to the petitioner under decedent’s will must now be considered. After authorizing the purchase of an annuity to provide for the support payments due his first wife, decedent stated: ‘ ‘ but this authorization shall not preclude my executor in its absolute discretion from making any different settlement or adjustment of said obligation ”. (Par. first of decedent’s will.)
Concededly, to date it has been the duty of the executor to provide for payment of support due decedent’s first wife from all assets in the estate. Does the quoted discretionary power change the normal procedure for payment of contingent and unliquidated claims and authorize the executor upon its final accounting to transfer its obligation to the trustee of decedent’s residuary trust with provision that future payments be made from the interest and principal of that trust fund? This is the critical judicial problem presented.
The grant of discretion to the executor must be construed in the light of all the existing circumstances. The starting point of construction here is the proposition that discretion is not unbridled; it is subject to limitation. (Matter of Bond, 251 App. Div. 651.)
What limitations restrict and proscribe the conduct of an executor granted discretionary power under a will presents a generally novel question. It has prompted this court to conduct what concededly is not an exhaustive and perhaps not even an effective, but certainly a diligent and extensive judicial review.
Insight as to limitations imposed on the exercise of discretion generally, is found in Matter of Bond (251 App. Div. 651, 654 [3d Dept., 1937], supra). There, the court speaking through Justice Heffernan made the oft-quoted observation that in the exercise of discretion “ principles of law are to be ascertained and followed. Justice is administered in the courts on settled *975 and fixed principles. It does not vary, ‘ like the Chancellor’s foot ’. The rights of litigants do not rest in the discretion or grace of the judge. In all cases that come under his consideration a judge must act with discretion and discrimination and give weight to every circumstance bearing on the question to be adjudicated. He is not at liberty, in determining personal or property rights, to act at his own discretion unrestrained by the legal and equitable rules governing those rights (Italics added.)
In Matter of Talbot (170 Misc. 138 [Surr. Ct., Orange County, 1939]), the learned Surrogate construed provisions under a will that gave trustees discretion to determine whether any moneys, stocks or securities were to be considered capital or income. In construing the discretion given, the court stated (p. 143): “we cannot assume that this testator intended to violate a/ny of the settled rules of law in giving this authority to his trustees ” (italics added). In Matter of Clark (275 N. Y. 1) the court reviewed a discretionary grant to testamentary trustees to appraise and evaluate the decedent’s property. In passing upon the exercise of that discretion in reference to elective rights of a widow, the court reviewed the applicable statute (Decedent Estate Law, § 18) and determined the purpose of the Legislature in enacting it. The court then held that the trustees could not exercise their discretion to frustrate the determined legislative purpose. In Peterson v. John Hancock Mut. Life Ins. Co. of Boston (116 F. 2d 148, 151) it was stated that “ legal discretion ” does not extend to a refusal to apply well-settled principles of law to a conceded or undisputable state of facts. See, also, Board of Mississippi Levee Comrs. v. Kellner (189 Miss. 232, 245), where the court stated that where a power was granted to a public board to be exercised ‘1 at its discretion ’ ’, the grant should be construed to mean a legal discretion.
This court’s review has failed to disclose a single authority that holds, or in fact suggests, that discretion may be exercised to abrogate express statutory requirements, ignore discernible legislative intent, or override established public policy. At least these restraints appear to interdict the exercise of any power of discretion. Since this court has found that the proposal of the petitioner would violate each of these restraints, it must be denied for the reasons stated.
Further, there is authoritative precedent for the proposition that discretion granted an executor does not include the power to change a decedent’s will. In Pray v. Belt (1 Pet. [26 U. S.] *976 670 [1828]), our learned fourth Chief Justice Marshall dealt with a testamentary grant of discretion. He observed that (p. 680) ‘ ‘ the acting executors, and executrix, are empowered, in all cases of dispute or contention, to determine what is the intention of the testator; and their decision is declared to be final ’ ’. In construing the quoted discretionary power, the learned Chief Justice stated: “It certainly does not include the- power of altering a will. It cannot be contended, that this clause would protect the executors in refusing to pay legacies altogether, or not paying to A, a legacy bequeathed to B, or in any other plain deviation from the will ” (p. 680; italics added).
Similarly, in American Security & Trust Co. v. Frost (117 F. 2d 283, 286 [C. A., D. C. 1940]), the court observed that a carte blanche construction of a power of discretion given to testamentary trustees ‘ ‘ would open the whole will to such revision and change as they might think wise or desirable ’ ’, and held that such construction was not to be permitted.
In Matter of Dobbins (206 Misc. 64, 67 [Surr. Ct., Monroe County, 1953]) the court stated that certain distributees “ argue that since the testator provided that the ‘ decision or interpretation ’ of his executor ‘ on any questions of my will must be final ’, the executor has the right to do with the residue as he sees fit”. The court answered the argument as follows (p. 67): “ The discretion granted to the executor, so far as valid, relates to dealings with the testator’s sister, Florence, and with the specific legatees, and it is held that the executor has no authority to divert the residue from the purpose for which the testator bequeathed it
In the opinion of this court the real basis of the cited decisions is that the right to make a will is personal to a decedent. It is not alienable or descendable. It dies with the decedent.
The cited authorities have particular application to the case for decision. The express terms of the decedent’s residuary trust provide that the income therefrom is to be paid or applied for the benefit of decedent’s second wife, Jean Runals, for and during the term of her life or until such time as she may remarry, “ whichever be earlier ”. It also provides for invasion of principal of the trust for the benefit of the second wife after exhaustion of the marital deduction trust. The right of invasion of principal is to continue until such time as she dies or remarries and is to be in such amount as the trustee, in its discretion, determines necessary for “ the proper care, support or maintenance ’ ’ of the second wife. Upon death or remarriage of the second wife the remaining principal of the trust is to *977 be divided “ into as many equal parts as shall equal in number those of my said children, grace a. lord, eleahor r. peters and dorothy b. hughes, who shall then be living, and those of my said children who shall not then be living, but shall have issue then living, and to pay over and distribute one such equal part to each of my said three children then living, and one such equal part per stirpes to the issue then living of each of my said children who shall not be then living”. (See par. eighth of decedent’s will).
Under the petitioner’s proposal of impressing upon this residT uary trust the obligation of making support payments for the first wife for as long as she lives, not one of the terms of the residuary trust can be carried out as the decedent directed they should be. For if the trustee of the residuary trust is required to make monthly support payments of $300 to decBr dent’s first wife, it cannot pay the full income to the second wife as it was directed to do. Neither will the trustee be able to exercise its absolute and unlimited discretion as to invasion of the principal of the trust for the benefit of the second wife if such principal is to fund the support payments of the first wife. Finally, while the first wife lives, upon remarriage or death of the second wife, the trustee will be unable to divide and pay over to the remaindermen the remaining principal because retention of it will be required as the source of continuing payments to the first wife.
It is the judgment of this court that the petitioner’s proposal if granted would substantially alter the decedent’s will and result in a plain deviation of his testamentary scheme. For this additional reason it cannot be permitted.
The conflict of interests which would result in granting petitioner’s proposal provides a third separate and independent basis of support for this court’s decision.
As proposed, the trustee of the residuary trust is to be charged with making support payments of $300 a month to decedent’s first wife. If the income therefrom is insufficient for this purpose, then it is proposed that the principal will be used. The value of. the residuary trust as reflected in the account is $66,144.84 representing $52,258.13 of previously distributed property, together with a proposed distribution of the net balance of the property remaining in the hands of the executor of a value of $13,386.71.
Taking into consideration the fact that the principal of the residuary trust consists primarily of common stocks with average yield and the further consideration that the trust fund is *978 subject to the payment of commissions, it is speculative whether the net income therefrom will equal the $3,600- yearly payments required for the support of decedent’s first wife. However, even if the principal of the residuary trust was thus sufficiently productive, such principal is subject to reduction by invasion for the benefit of decedent’s second wife. It is no answer that a condition of such invasion is the exhaustion of the marital deduction trust. Extended illness or other misfortune depleting that fund could occur all too rapidly leaving the trustee then in the unenviable position of having to choose between making payments to the first wife for support under the agreement, or to the second wife as income beneficiary under the trust. An equal, if not greater conflict of interest, could result between decedent’s first wife and the remaindermen of the residuary trust if petitioner’s proposal were granted. Upon death, or remarriage of decedent’s second wife, it is provided that the residuary trust is to terminate and the remaining proceeds are to be distributed to decedent’s named children, or grandchildren as remaindermen. In the event of termination, the trustee would be required to either refuse the demand of the remainder-men for the remaining proceeds, or to refuse the first wife continued payments of support.
The New Testament states in part: “ no man can serve two masters. For either he will hate the one, and love the other; or he will sustain the one and despise the other. You cannot serve God and Mammon ”. (Holy Bible, by John Murphy Publishing Co., Gospel of St. Matthew, chapter 6, verse 24; to same effect, Gospel of St. Luke, chapter 16, verse 13.)
In Jacobs v. Beyer (141 App. Div. 49, 52) the rule of law laid down hy Lord Chancellor of England, to wit: “ No man can in this court, acting as an agent, be allowed to put himself into a position in which his interest and his duty will be in conflict ”, (Parker v. McKenna, L. R 10 Ch. App. 96, 118), was adopted by the Appellate Division, Second Department.
While the case decisions do not always make a nice distinction between the situation where the loyalty of a fiduciary is divided between the interest of two beneficiaries and the situation where the loyalty of fiduciary is divided between the self-interest of the fiduciary and a beneficiary, it is clear that both are repugnant to established principles of law and equity. What is sought to be avoided are those situations when in behalf of one beneficiary it is the duty of the fiduciary to contend for that which his duty to another beneficiary, or his self-interest, requires him to oppose. City Bank Farmers Trust Co. v. *979 Cannon (264 App. Div. 429, 432) demonstrates the real and practical danger to a fiduciary. The court said: ‘ ‘ if the existence of a divided loyalty or conflict of interest in itself constitutes a breach of trust, and if the rule invoked by the guardian ad litem be a rule of substantive law and not one of evidence, then no amount of good faith in fact on the part of the trustee could overcome it. Harsh though its consequences may occasionally be, it seems to be well established that the rule is one of substantive law. (Munson v. S., G. & C. R. R. Co., 103 N. Y. 58; Wendt v. Fischer, 243 id. 439; Meinhard v. Salmon, 249 id. 458.) The inflexibility of the rule is expressed in Munson v. S., G. & C. R. R. Co. (supra, p. 74) as follows: 1 The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case.’ The reason for the inexorableness of the rule was stated by Cardozo, J., in Wendt v. Fischer (supra) in these words (p. 444): 1 Only by this uncompromising rigidity has the rule of undivided loyalty been maintained against disintegrating erosion ’ ”.
The Surrogate’s Court of Cattaraugus County is constrained to heed the admonitions and follow the precepts of the Bible, the Lord Chancellor of England, and the Appellate Division, although not necessarily in that order. This court holds that the proposal of the petitioner is denied for the further reason that it can lead to divided loyalty and conflict of interests on the part of the residuary trustee.
Petitioner next contends that everyone interested in the residuary trust is agreeable to its proposal. Accordingly, it argues that this court should grant the relief sought as a matter of course.
It appears that the decedent’s second wife signed a waiver of citation to the judicial settlement herein. She has raised no objection and petitioner recites that she actively desires the petitioner’s proposal be given effect. The three children of the decedent named as remaindermen have filed waivers of citation to the judicial settlement. Petitioner, as trustee, has also signed a waiver of citation and petitions for a decree authorizing its proposal. Decedent’s first wife was served with a citation. She has raised no objection. Further, after the submission of the petition for judicial settlement and while the matter was under *980 consideration by this court, the first wife also signed and submitted to the court a written consent to the petitioner’s proposal. Do these facts individually, or collectively authorize this court to grant the relief requested? In the judgment of this court they do not.
As we have noted, petitioner’s proposal requires changes to provisions of the residuary trust concerning payment of income, right of invasion of principal and the time of termination. What petitioner seeks is an amendment of a testamentary trust of decedent’s estate. It seeks this after the death of the creator of the trust.
EPTL 7-1.9 is the successor statute to former section 23 of the Personal Property Law and section 118 of the Beal Property Law. It controls the revocation or amendment of trusts. EPTL 7-1.9 (subd. [a]) provides in part: “Upon the written consent * * * of all the persons beneficially interested in a trust of property, heretofore or hereafter created, the creator of such trust may revoke or amend the whole or any part thereof by an instrument in writing ’ ’. Here, decedent created a valid trust which was to continue until death or remarriage of his •second wife. The creator of that trust is now dead. As a consequence, the trust may not be amended or revoked.
Matter of Bowers (2 Misc 2d 482 [Surr. Ct., Kings County, 1956]) is particularly in point in that it answers the argument of the petitioner, states the rights of the parties, the duties of the court and sets forth in detail judicial precedent. In a case similar to that at bar the court said (pp. 48-U485): “ The trust is indestructible. Neither a desire to condone its destruction, nor the lack of opposition to the application, nor the comparatively small trust fund involved, nor other possible considerations no matter how worthy, give the court the right or power to disregard 1 the stringent restrictions of the statutes and the numerous and emphatic decisions of the Court of Appeals which prohibit the destruction of trusts ’. (Matter of Hanna, 155 Misc. 833, 834; Matter of Freiberger, 177 Misc. 592; Matter of Hyatt, 81 N. Y. S. 2d 911; Personal Property Law, § 15; Beal Property Law, § 103). As stated in Matter of Higgins (205 Mise. 385, 391), 1 So long as the trust purpose as a practical matter can be accomplished, it should be. ’ ‘ Its duration may not be foreshortened by judicial fiat or by any act of the interested parties ’ (Matter of Duingnan, 85 N. Y. S. 2d 846, 851, citing cases), except of course, when properly revoked by the settlor himself (Carlebach v. Central Hanover *981 Bank & Trust Co., 269 App. Div. 45; Ingersoll v. Fifth Ave. Bank of New York, 91 N. Y. S. 2d 581).”
In Matter of Becker (50 Misc 2d 308 [Surr. Ct., Kings County, 1966]), the executors, trustees and special guardian for infant remaindermen all entered into a voluntary compromise agreement to alter a testamentary trust. The court noted that there was no objection to the proposed agreement. The court held that the trust was indestructible and disapproved the agreement.
In the light of the cited authority it is not necessary to consider the absence of any agreement to petitioner’s proposal by the issue of Grace A. Lord, Eleanor B. Peters and Dorothy B. Hughes who are contingent remaindermen under the residuary trust. It is sufficient that the creator of the trust is dead. The court holds that petitioner seeks to amend the decedent’s residuary trust by imposing upon it a charge for the payment of support to the first wife. It holds further that the trust of the decedent’s residuary estate is indestructible. Accordingly, it disapproves the petitioner’s proposal for this fourth separate reason.
The executor does not carry the sole burden of determining how the monthly support payments due decedent’s first wife should be provided. This court has also been entrusted with a share of that responsibility. SOPA 1804 (subd. 1) specifically charges the Surrogate’s Court with the responsibility of reserving “ such estate assets as the court shall determine to be adequate to pay the contingent or unliquidated claim ’ ’. In addition, SOPA 201 (subd. 3) imposes upon the Surrogate’s Court the duty to exercise ‘1 full and complete general jurisdiction in law and in equity to administer justice in all matters relating to the affairs of decedents ”, and “ to try and determine * * * any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matters by such order or decree as justice requires ”. The court holds that the provision for payment of the unliquidated claim of decedent’s first wife is to be by reservation of assets by the executor.
There remain the problems of amount of assets to be reserved and the management of those assets during the reserved period. Unfortunately, SCPA 1804 provides no formula for the determination of the amount of the reserve. It has been held that ‘ ‘ the extent of protection needed is a judicial question”. (Matter of Reid, 165 Misc. 207, 209, affd. 254 App. Div. 850.) All authorities agree that the obligation of the court is to reserve an ‘1 ade *982 quate ” amount of assets. (Matter of Reid, supra; Matter of Burridge, 146 Misc. 527; Matter of Grimley, 200 Misc. 901.)
In giving practical application to the judicial requirements, Surrogate Foley in Matter of Burridge (supra) ordered the reservation of $20,000 to provide for required monthly payments of $50. The learned Surrogate gave no formula, hut stated (pp. 529-530) that the claimant was “ entitled to an order * * * requiring the legal representative of the estate to set aside a sum sufficient to produce the monthly payments due her during her lifetime ”. (Italics added.)
In Matter of Reid (supra, p. 210), Surrogate Delehanty noted that a reserved fund of $540,000, together with a capital fund in the hands of the trustee ‘ ‘ would make a total of $828,000 on which the earnings would he very nearly the amount needed annually for payment to objectant ”, (italics added), but he concluded after reviewing the possibility of invasion of principal as follows (p. 210): “ Out of a desire, however, to make provision which cannot in any case be deemed inadequate, the court will direct a reserve of $600,000 out of estate assets ”, observing that with invasion of principal this fund would provide for payments for a period “ nearly double the expectancy ” of the claimant.
In Matter of Grimley (200 Misc. 901) the court observed that there was “ grave douht that the entire net estate will yield income sufficient to meet the weekly payments to the widow and it undoubtedly will be necessary to invade capital to supplement income in meeting the payments to her. Taking into consideration the need for such invasions and the resultant diminution of income, the court finds that there will be required a reservation of the entire net estate remaining after delivery of specific legacies and disposition of the escrow fund hereinafter referred to. Such a reservation will be adequate to protect the position of the widow (Matter of Reid, 165 Misc. 207, affd. 254 App. Div. 850; Matter of Heckscher, N. Y. L. J., Oct. 21, 1946, p. 966, col. 2) ”. (Italics added.)
The three cited cases lead this court to the conclusion that, to the extent reasonably practical, the court should reserve a fund, the income from which will approximate the required payments. It is observed that by so doing the assets of the decedent are preserved with little or no diminution for the ultimate benefit of decedent’s legatees. Here, the account of executor reflects that the residuary estate consists of assets valued at $66,144.84. Reasonable earnings on such sum should approximate the $3,600 needed annually for support payments. *983 If they do not there is sufficient principal available for invasion to alone provide payment for over 18 years. With a life expectancy of 5.19 years, according to Commissioners 1958 Standard Ordinary Mortality Tables, this fund should provide adequate protection for payments to decedent’s first wife. (Reference, McKinney’s Cons. Laws of N. Y., Book 27, Insurance Law, Appendix, p. 329.) Accordingly, this court orders the reservation of assets in the sum of $66,144.84.
The will of decedent gives broad powers to both the executor and trustee. Included is the power of the executor to hold property in the form it was upon the death of the testator. In addition, the executor is authorized to invest and reinvest in securities of its choice without restriction as to whether such investments are permissible under any present or future applicable law, rule or court decision. (Par. eleventh, subpars. A and D of decedent’s will.)
In managing the assets ordered reserved, may the executor exercise the discretionary right of investment granted it, or is it limited to those investments commonly referred to as “legáis” permitted a fiduciary under EPTL 11-2.2! Matter of Reid (165 Misc. 207, 209, affd. 254 App. Div. 850, supra) seems to supply the answer to the question posed. There, the court stated: ‘ ‘ there is no requirement in the law that the court which fixes the reserve to protect such claim should compel adherence to any different policy of administration of the estate than that which the testator prescribed for his executors ”. In the judgment of this court, the quantity and quality of the assets to be reserved furnishes adequate protection for payment of the unliquidated claim of decedent’s first wife. The statute does not require a guarantee of payment. (See SCPA 1804.)
The decision of this court is that the executor will retain in its possession assets of the value of $66,144.84 for the purpose of providing payment of the unliquidated claim of decedent’s first wife and in the management of such reserved assets the executor is free to exercise the discretionary power of investment granted it by the decedent.
It is ordered that a decree settling the accounts of the executor in accordance with the decision reached be submitted upon notice to all interested parties.